**SIGNED this 25th day of August, 2015**

/s/ Nicholas W. Whittenburg
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Donald Edward Nutter, Jr. | ) | No. 1:14-bk-15682-NWW |
| Robin Gail Nutter | ) | Chapter 7 |
| | ) | |
| Debtors | ) | |
| | ) | |
| Gregory Trent | ) | |
| Victoria Trent | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Adv. No. 1:15-ap-01008-NWW |
| | ) | |
| Robin Gail Nutter | ) | |
| | ) | |
| Defendant | ) | |

# M E M O R A N D U M

This adversary proceeding is before the court on the Motion to Dismiss filed by the

defendant on July 24, 2015, and the Motion to Quash Issuance of Alias Summons filed by

the defendant on August 7, 2015. Both motions relate to the plaintiffs' failure to perfect service within the 120-day period prescribed by Fed. R. Civ. P. 4(m), as made applicable in bankruptcy adversary proceedings by Fed. R. Bankr. P. 7004(a)(1). The defendant contends that the issuance of an alias summons must be quashed and the proceeding dismissed due to the plaintiffs' failure properly to serve process within that 120-day period.

I.

On December 22, 2014, the debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and a meeting of creditors was scheduled for January 30, 2015. Accordingly, the deadline for initiating adversary proceedings seeking determinations that debts are nondischargeable under § 523(a)(2) of the Code was March 31, 2015. Fed. R. Bankr. P. 4007(c); 11 U.S.C. § 523(c). On March 10, 2015, the plaintiffs filed the complaint initiating this adversary proceeding, which seeks a determination that the defendant's debt is nondischargeable under § 523(a)(2).

The court issued a summons that same day. Service of process in bankruptcy adversary proceedings may be made by mail, Fed. R. Bankr. P. 7004(b), but may not be made electronically as is permitted for most other filings in bankruptcy cases, contested matters, and adversary proceedings. Admin. Procs. for Electronic Case Filing for the U.S. Bankr. Ct. E.D. Tenn. § II.C.2.; *compare* Fed. R. Bankr. P. 7005; Fed. R. Civ. P. 5(b)(2)(E) (permitting electronic service of pleadings and other papers subsequent to the original complaint). Service of a summons and complaint on a defendant who is a debtor in bankruptcy requires service on both the debtor's attorney and the debtor, "at the address shown in the petition or to such other address as the debtor may designate in a filed

writing." Fed. R. Bankr. P. 7004(b)(9) and (g); *compare* Fed. R. Bankr. P. 7005; Fed. R. Civ. P. 5(b)(1) (service of pleadings and other papers subsequent to the original complaint is made on the attorney when the party is represented by counsel).

The plaintiffs' attorney says that there was "much confusion and disorganization" in his office in early March 2015 due to the relocation of his law office the previous month. Although the attorney's staff who unpacked boxes of files found the subfile relating to a state court action to domesticate a West Virginia judgment against the defendant, they did not find the adversary proceeding subfile. In early April 2015, the attorney made a trip to Europe to visit with his daughter. When he returned on April 15, 2015, he went immediately to a three-day National Guard drill. During this time, the attorney confirmed by telephone with his bankruptcy clerk that process in this proceeding had been served, but that person gave the assurances based on proof of service contained in the domestication subfile. During April, the plaintiffs' attorney was assigned by the National Guard to conduct a sexual harassment/sexual assault investigation.[1]

Counsel for the plaintiffs never filed proof of service of the original summons and the complaint.[2] A "few weeks" prior to May 14, 2015, the plaintiffs' attorney had granted the defendant's counsel's request for a one- or two-week extension of the answer dead-

---

[1] The plaintiff's attorney is a commissioned officer in the Georgia Army National guard, serving as a Brigade Judge Advocate. In addition to those duties and his law practice, the attorney serves on the boards of directors of six non-profit organizations.

[2] The summons form submitted by the plaintiffs' attorney included a certificate of service indicating that process was served on March 10, 2015, by electronic mail. However, the summons and complaint could not have been served at the time the form was submitted because the summons had not yet been issued by the Clerk.

line. Then, on May 13 and 14, the plaintiffs' attorney inquired as to whether the defendant intended to file an answer. Counsel for the defendant responded by an email on the latter date, pointing out there was a "service" issue by advising the plaintiffs' attorney: "Before you fire off a Motion for Default, check, double-check, and triple-check your service of process. I have done so. You are not due an answer yet." Plaintiffs' counsel replied that he would check. He did not do so, but unquestioningly continued to assume the accuracy of his bankruptcy clerk's assurance that process had been properly served.

Proof of service was still not filed so, on July 9, 2015, the court ordered counsel for the plaintiffs to appear and show cause why the proceeding should not be dismissed for failure to prosecute. Counsel for the plaintiffs was out of the office on National Guard training and maneuvers from July 10-25, 2015. Nevertheless, on July 20, 2015, in response to the court's "show cause" order, the plaintiffs filed a motion for a default judgment. That motion alleged that, although proof of service had not been filed, process had been served on the defendant on the date the complaint was filed, "by serving the same upon her attorney," apparently a reference to electronic service. As pointed out above, electronic service is not permitted, and service on a debtor requires service on the debtor herself, not just her attorney. The following day, the bankruptcy court sent counsel an email pointing out that he had failed to submit a proposed order granting the motion for a default judgment in accordance with local rules and administrative procedures. The attorney feels that he did not have reason to question his bankruptcy clerk's knowledge and abilities until that time.

On July 24, 2015, the defendant filed a response to the motion for a default judgment and a motion to dismiss, pointing out the insufficiency of service of process. On

-4-

July 28, 2015, the plaintiffs' attorney found the adversary proceeding subfile and realized that process had not been properly served. On that date, counsel procured the issuance of an alias summons. On August 7, 2015, the defendant filed a motion to quash the issuance of the alias summons. On August 5 and 8, 2015, the plaintiffs' attorney was given additional investigative and/or legal assignments for the National Guard. On August 17, 2015, the plaintiffs' attorney filed four different proofs of service of the alias summons and the complaint, certifying that process had been served by mail on various dates and at various addresses.[3] The court has determined, however, after hearing the defendant's testimony and receiving other evidence tendered or proffered at a hearing on August 20, 2015, that process had not been properly served by that date or, at the very least, was not timely.[4] The defendant's attorney has acknowledged that his client was made aware of the adversary proceeding shortly after it was commenced.

---

[3] The first and second certificates of service are dated July 28 and indicate that process was served on that date on the defendant and her attorney by email and certified mail without identifying the addresses to which the mailings were sent. The third certificate of service is dated August 14 and indicates that process was served on July 28 on the defendant and her attorney by email and certified mail; the addresses stated on this certificate are the correct addresses for the defendant and her attorney. The fourth certificate of service is dated July 28 and indicates that process was served on that date on the defendant and her attorney by email and certified mail; the address for the defendant stated on this certificate is incorrect, but the address for her attorney is correct.

[4] To the extent that process was mailed more than seven days after the issuance of the alias summons (i.e., after August 4, 2015), service would be insufficient under Fed. R. Bankr. P. 7004(e) since response deadlines in bankruptcy adversary proceedings run from the issuance of the summons, not service of process.

II.

A.

Fed. R. Civ. P. 4(m), as made applicable in bankruptcy adversary proceedings by Fed. R. Bankr. P. 7004(a)(1), provides, in pertinent part:

> **Time limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In other words, the second sentence requires the court to extend the time for service if the plaintiff shows "good cause" for the failure to serve process within 120 days after the complaint was filed. Under the first sentence, however, even if the plaintiff does not show such "good cause," the court may either dismiss the proceeding or order that service be made within a specified time. *E.g.*, *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008); *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996); *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995); *Espinoza v. United States*, 52 F.3d 838, 840-41 (10th Cir. 1995); *Petrucelli v. Bohringer & Ratzinger, GMBH Ausdereitungsanlagen*, 46 F.3d 1298, 1307-08 (3d Cir. 1995); *Dunham-Kiely v. United States*, No. 3:08- CV-114, 2010 WL 1882119, at *2-*4 (E.D. Tenn. May 11, 2010) (Phillips, J.); *Taylor v. Stanley Works*, No. 4:01-CV-120, 2002 WL 32058966, at *6 (E.D. Tenn. July 16, 2002) (Edgar, C.J.); *Buffalo Constr., Inc. v. McMillan (In re McMillan)*, Bankr. No. 09-30986, Adv. No. 09-3073, 2010 WL 234241, at *3 (Bankr. E.D. Tenn. Jan. 13,

2010) (Stair, J.); *Russell v. Goins (In re Goins)*, Bankr. No. 03- 23874, Adv. No. 05-5055, 2006 WL 2089922, at *3-*4 (Bankr. E.D. Tenn. July 6, 2006) (Parsons, J.); *see Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996); *Winston v. Bechtel Jacobs Co.*, No. 3:13-CV-192-TAV- CCS, 2015 WL 1192704, at *3-*4 (E.D. Tenn. Mar. 16, 2015) (Varlan, C.J.). As the Supreme Court has explained:

> Most recently, in 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period "even if there is no good cause shown." . . . .
>
> The Federal Rules thus convey a clear message: Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow.

*Henderson v. United States*, 517 U.S. 654, 662-63 (1996) (citations omitted). The advisory committee note to the 1993 amendment reads:

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service. A specific instance of good cause is set forth in paragraph (3) of this rule, which provides for extensions if necessary to correct oversights in compliance with the requirements of multiple service in actions against the United States or its officers, agencies, and corporations. The district court should also take care to protect pro se plaintiffs from consequences of confusion or delay attending the resolution of an in forma pauperis petition.

There is *dicta* from Sixth Circuit opinions in cases decided after the 1993 amendment to the effect that, "[a]bsent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal." *Byrd v. Stone*, 94 F.3d

-7-

217, 219 (6th Cir. 1996) (citing *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994)[5]); *Catz v. Chalker*, 142 F.3d 279, 289 n.10 (6th Cir. 1998); *see Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005) (to obtain the issuance of a new summons after the 120-day period has expired requires a showing of excusable neglect). However, this court believes that the Court of Appeals, if squarely presented with the issue, would follow the plain meaning of Rule 4(m), particularly in light of the advisory committee note, the Supreme Court's *dictum*, and the great weight of authority. Indeed, at least one panel of the Sixth Circuit has so held:

> Rule 4(m) requires the district court to undertake a two-part analysis. First, the court must determine whether the plaintiff has shown good cause for the failure to effect service. If he has, then "the court shall extend the time for service for an appropriate period." Second, if the plaintiff has not shown good cause, the court must either (1) dismiss the action or (2) direct that service be effected within a specified time. In other words, the court has discretion to permit late service even absent a showing of good cause.

*Stewart v. TVA*, 238 F.3d 424 (6th Cir. 2000) (unpublished table decision), *available at* 2000 WL 1785749, at *1 (citing *Henderson v. United States*, 517 U.S. at 662) (additional citations omitted).

B.

The court must first consider whether the plaintiffs have shown "good cause" for not serving process within the 120-day period. "Plaintiff bears the burden to establish good cause. Good cause necessitates a demonstration of why service was not made within the time constraints of Fed.R.Civ.P. 4(j) [now 4(m)]. The determination of good cause is left to the sound discretion of the district court." *Habib v. General Motors Corp.*,

---

[5] *Habib* was decided under the pre-1993 amendment version of Rule 4(j).

15 F.3d 72, 73 (6th Cir. 1994) (citations omitted). "Courts that have considered this issue, however, agree that counsel's inadvertent failure or half-hearted efforts to serve a defendant within the statutory period does not constitute good cause." *Friedman v. Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) (citations omitted). The plaintiffs' attorney's only explanation for his failure to perfect service within the 120-day period is that the failure resulted from the confluence of the lawyer's absence from the office, the temporary loss of the adversary proceeding subfile, and his staff member's incompetence. These excuses fall within the "inadvertent failure or half-hearted efforts" category. As he readily admits, it was the responsibility of counsel for the plaintiffs to assure that process was properly served, despite his vacation plans, National Guard duties, and corporate board service. The plaintiffs have not shown "good cause" for their failure to effect proper service within the 120-day period. *See Sydney v. Columbia Sussex Corp.*, No. 3:13-CV-312-TAV-CCS, 2014 WL 7156953, at *3 (E.D. Tenn. Dec. 15, 2014) (failure to serve process due to firm's transition to new case management system "sounds in mistake and inadvertence of counsel and/or his staff rather than good cause").

C.

The court next turns to whether it should nevertheless exercise its discretion to extend the deadline despite the absence of "good cause." The United States District Court for this district has adopted a five-factor test as "a helpful guide for the Court's exercise of discretion":

> (1) whether a significant extension of time is required; (2) whether an extension of time would cause actual prejudice to the defendant other than the inherent 'prejudice' in having to defend the lawsuit; (3) whether the defendant had actual notice of the lawsuit; (4) whether dismissal of the com-

>plaint without prejudice under Rule 4(m) would substantially prejudice the plaintiffs, i.e., cause the plaintiffs' suit to be time-barred by the statute of limitations; and (5) whether the plaintiffs have made diligent, good faith efforts to effect proper service of process.

*Winston v. Bechtel Jacobs Co.*, No. 3:13-CV-192-TAV- CCS, 2015 WL 1192704, at *4-*5 (E.D. Tenn. Mar. 16, 2015) (citations omitted) (Varlan, C.J.); *accord*, *e.g.*, *Taylor v. Stanley Works*, No. 4:01-CV-120, 2002 WL 32058966, at *7 (E.D. Tenn. July 16, 2002) (Edgar, C.J.); *Buffalo Constr., Inc. v. McMillan (In re McMillan)*, Bankr. No. 09-30986, Adv. No. 09-3073, 2010 WL 234241, at *4 (Bankr. E.D. Tenn. Jan. 13, 2010); *Russell v. Goins (In re Goins)*, Bankr. No. 03-23874, Adv. No. 05-5055, 2006 WL 2089922, at *5 (Bankr. E.D. Tenn. July 6, 2006). The defendant focuses on the fifth factor and, indeed, it is clear to the court that there is no excuse for the plaintiffs' failure properly to serve process within the 120-day period, particularly when service in bankruptcy adversary proceedings may be made by simple mail service. All other factors, however, weigh in favor of the plaintiffs.

The defendant has not pointed to any actual prejudice resulting from the delay in service. She contends that she is prejudiced by having to defend this adversary proceeding, but that would have been required had process been served promptly. The defendant admittedly had actual notice of the proceeding from the outset. As for the length of the extension, the 120-day period in this proceeding expired on July 8, 2015. Based on evidence submitted at the August 20, 2015, hearing, while it appears the plaintiffs attempted to serve the defendant on July 28, 2015, and again on August 14, 2015, such service was ineffective. However, in light of the defendant's acknowledgement that she and her counsel were aware of the pending action and the lack of any

prejudice caused by the delay in service, an additional fourteen days within which to secure issuance of another alias summons and serve it along with the complaint would not be a significant extension of time. Finally – and perhaps of the greatest importance – is that the prejudice to the plaintiffs of denying an extension would be great. Because the deadline for filing complaints of the type initiating this proceeding expired on March 31, 2015, the dismissal of this proceeding – although nominally without prejudice – would effectively constitute a dismissal with prejudice.

      The defendant relies primarily on the case of *Dreier v. Love (In re Love)*, 232 B.R. 373 (Bankr. E.D. Tenn. 1999), *aff'd on other grounds*, 242 B.R. 169 (E.D. Tenn. 1999), *aff'd*, 3 F. App'x 497 (6th Cir. 2001). In that case, the plaintiffs filed a complaint for a determination of the nondischargeability of a debt. Process was served on the debtor but not the debtor's attorney. The plaintiffs then filed a motion for a default judgment, to which the debtor responded that the motion should be denied because service was not properly perfected. That response was filed approximately 85 days after the complaint was filed. The court conducted a hearing on the motion on the 121st day after the filing of the complaint. Apparently, process was not properly served until the day after that hearing. A month later, the debtor filed a motion to dismiss. Judge Stair granted the motion, finding that "good cause" for a mandatory extension had not been shown. He recognized an issue as to whether Sixth Circuit authorities permit an extension when "good cause" has not been shown, but declined to exercise his discretion (if he has it) to extend the service deadline due to the lack of evidence of "diligence and reasonable efforts to serve the Debtor." *Love*, 232 B.R. at 379. The court noted that the debtor's attorney pointed out the defective service in the response to the motion for a default judgment filed with 34 days

-11-

remaining in the 120-day service period, and that plaintiffs' counsel had acknowledged familiarity with the rules regarding service of process. *Id.* at 378-80.

The district court affirmed Judge Stair's decision. However, its opinion was limited to an analysis of whether the plaintiffs had shown "excusable neglect" such as may warrant an extension of a deadline after it has expired under Fed. R. Bankr. P. 9006(b)-(1)(2). *See Donaldson v. Lopez (In re Lopez)*, 274 B.R. 717, 720 (Bankr. E.D. Mich. 2002), *remanded*, 292 B.R. 570 (E.D. Mich. 2003).[6] The district court, like the bankruptcy court, focused almost exclusively on the plaintiffs' culpability in neglecting to perfect service within the 120-day period.[7] The Sixth Circuit affirmed the district court in an unreported opinion, with one judge concurring "[w]ith some reluctance," noting that the court was "giv[ing] considerable deference to the bankruptcy judge and to the district court." *Love*, 3 F. App'x at 498. Again, the court considered only whether the plaintiffs had shown "good cause" for or "excusable neglect" warranting an extension under the second sentence of Rule 4(m) and Fed. R. Bankr. P. 9006(b)(1), respectively. The Court of Appeals did not consider whether the bankruptcy court abused its discretion in denying an

---

[6] The district court remanded *Lopez* only because the bankruptcy court had failed to consider all relevant factors in deciding whether to exercise its discretion under the first sentence of Rule 4(m).

[7] The court touched on the prejudice to the defendant, noting that the delay in serving process and in appealing Judge Stair's decision had resulted in "a delay of his bankruptcy discharge." *Love*, 242 B.R. at 172. The court did not explain how that delay adversely affected the defendant. This court notes that there has been no such delay in this case, because discharge was granted on April 1, 2015, leaving open only the issue of whether the debt to the plaintiffs was discharged at that time. The district court in *Love* gave no consideration to the prejudice to the plaintiffs of denying an extension of the deadline for service.

extension under the first sentence of Rule 4(m) but affirmed "for the reasons stated by the district court." *Id.*

With all due respect, this court disagrees with Judge Stair's conclusion, for the same reasons stated in the *Lopez* case:

> The bankruptcy court reasoned that an extension "would be inequitable [,] . . . would require [it] . . . to ignore the dilatory actions of the Plaintiffs, would unjustly reward the Plaintiffs, and would deprive Rule 4(m) of its vitality." Since there was no finding that the defendant would have been prejudiced by the granting of an extension, it is not clear why the court believed that doing so would be "inequitable" or "unjust[ ]." And as the court's own analysis demonstrates, the charge of "dilatory" behavior is in essence simply a restatement of the hypothesis, i.e., that good cause is lacking. In this respect, then, *Love* seems to be making the senseless declaration that, assuming courts have the power to grant an extension without a showing of good cause, it will not do so because there has been no showing of good cause.
>
> *Love* also expressed concern for maintaining Rule 4(m)'s "vitality." What bears emphasis in this regard is that the rule's drafters clearly contemplated extensions in the absence of good cause if dismissal would mean that the action was forever barred. Contrary to what Love suggests, then, we believe that extension under the circumstances of this case is entirely consistent with both the letter and spirit of Rule 4(m).

*Lopez*, 274 B.R. at 720-21 (citations omitted).

This court in this adversary proceeding agrees with the conclusion reached by Judge Parsons in the *Goins* case, in which she granted an extension despite an insufficient showing of "good faith" under the second sentence of Rule 4(m):

> A weighing of the foregoing factors persuades the court that an extension of the service period rather than dismissal is appropriate. The defendants have now been served and the delay has not resulted in any actual prejudice to the defendants. Dismissal would end this action, highly prejudicing the plaintiff and the creditors she represents since the passing of the statute of limitations would prevent refiling. The Advisory Committee [Note] to Rule 4(m) states that relief in the form of an extension may be justified "if the applicable statute of limitations would bar the refiled action."

> Furthermore, this court is persuaded that permitting this action to go forward is in the interests of justice, one of the *Lopez* considerations. In applying Rule 4(m), courts must balance the rule's goal of timely service and efficient litigation with the desire to provide litigants their day in court. In this regard, it should be remembered that Rule 4(m) "is not a statute of limitations" but rather "a procedural rule dictating the procedures or time for service of process." "The 120–day service requirement is not meant to be enforced harshly or inflexibly." . . . .
>
> Lastly, there is no indication that granting an extension in this case "would undermine any policy considerations explicitly or implicitly contained in the procedural rules urging the prompt disposition of the particular type of matter." In making this observation, the court in no way condones plaintiff's inattentiveness nor otherwise suggests that the running of the statute of limitations would always compel this court to grant an extension. However, the court is convinced that under the facts of this particular case, "the core function of service" which "is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections," has been satisfied.

*Goins*, 2006 WL 2089922, at *6-*7 (citations omitted).

### III.

For the foregoing reasons, the court will enter an order denying the defendant's motion to dismiss this adversary proceeding and extending the deadline for proper service of process until fourteen days after entry of the order. The court will also deny the defendant's motion to quash the issuance of an alias summons.

###